IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED INVENTORY SERVICES, INC.,

    Plaintiff,

v.                                                                  No. 08-1208

TUPPERWARE BRANDS CORP. and
DART INDUSTRIES, INC.,

    Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
_____

*INTRODUCTION AND PROCEDURAL HISTORY*

On September 5, 2008, the Plaintiff, United Inventory Services, Inc. ("UIS"), initiated this action against the Defendants, Tupperware Brands Corporation ("Tupperware") and Dart Industries, Inc. ("Dart"). The complaint, as amended, alleges negligence, negligence *per se*, fraudulent and negligent misrepresentation, nuisance and fraudulent concealment under Tennessee law. In April 2009, the Defendants filed a counterclaim for declaratory judgment, damages and injunctive relief, averring defamation under state law and violations of 15 U.S.C. § 1051, *et seq*. Before the Court is the Defendants' motion for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*STANDARD OF REVIEW*

The standard of review for motions brought under Rule 12(c) is the same as a review pursuant to Fed. R. Civ. P. 12(b)(6). Jelovsek v. Bredesen, 545 F.3d 431, 434 (6th Cir. 2008), *cert. denied* ___ U.S. ___, 130 S. Ct. 199, 175 L. Ed. 2d 127 (2009). Motions to dismiss are governed

by Rule 12 of the Federal Rules of Civil Procedure. Subsection (b)(6) of the Rule permits the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, the plaintiff "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "And although [the Court] must accept all well-pleaded factual allegations in the complaint as true, [it] need not 'accept as true a legal conclusion couched as a factual allegation.'" Hensley Mfg., 579 F.3d at 609 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955)).

*FACTS ALLEGED*

The following facts have been alleged by UIS. The Plaintiff maintains an operating facility in Halls, Tennessee. (2d Am. Compl. ¶ 2.) The building (the "TOPS Building") is located on a 7.3-acre parcel identified as Lot 1 of the Tupperware Subdivision. (2d Am. Compl. ¶ 5.) Lot 1, along with an eighty-five-acre parcel at one time owned by Defendant Dart and identified as Lot 2, had from approximately 1970 to the mid-1990s been the site of a Tupperware manufacturing and distribution facility. (2d Am. Compl. ¶ 6.) Tupperware and other molded plastic products were produced at the plant. (2d Am. Compl. ¶ 9.) In approximately 1992 or 1993, production operations at the site ceased and the Tupperware facility was utilized as a distribution center until late 1994 or early 1995. (2d Am. Compl. ¶ 14.) During a majority of the time it was in operation, Tupperware

employees dumped unwanted products and other materials on the property, including the portion now owned by UIS.  (2d Am. Compl. ¶¶ 16-17.)

*POSITIONS OF THE PARTIES AND ANALYSIS*

In the instant motion, the Defendants seek judgment on a portion of count 1 and all of counts 3, 4 and 5 of the complaint as amended, which allege as follows:

Count 1 - Fraudulent and Negligent Misrepresentation

\*   \*   \*

116. The Defendants represented to U.I.S. that Lot 1 of the Tupperware Subdivision had no environmental issues.

117. That representation was false because substantial amounts of Tupperware products and other materials remained buried on Lot 1, including under the TOPS Building.

\*   \*   \*

Count 3 - Negligence

\*   \*   \*

128. Defendants owed a duty to U.I.S. to use reasonable care in the disposal of their solid waste.

129. Defendants owed a duty to U.I.S. to abide by the requirements of the Tennessee Solid Waste Disposal Act ("the Act").

130. Defendants owed a duty to U.I.S. to disclose any unlawful burials of solid waste on the property at the time U.I.S. purchased the property.

131. Defendants breached their duty by burying solid waste on the Halls Facility property after March 27, 1980 without obtaining a permit in violation of the Act.

132. Defendants further breached their duty by failing to inform U.I.S. of the unlawful burials on the property.

133. Defendants acted intentionally, knowingly or recklessly in burying solid

      waste on their property in violation of the Act.

134. Defendants further acted intentionally, knowingly or recklessly in failing to disclose the presence of unlawful solid waste burials on the property at the time U.I.S. purchased the property.

135. As a direct and proximate result of Defendants' unlawful burials and failure to disclose same to U.I.S., U.I.S. suffered harm by purchasing the property unaware of the buried waste and environmental liabilities.

136. Because Defendants acted intentionally, knowingly or recklessly, U.I.S. is entitled to an award of punitive damages against the Defendants.

<u>Count 4 - Negligence Per Se</u>

\*     \*     \*

138. The Act exists to protect the public health, safety and welfare.

139. After March 27, 1980, the Act prohibited the burial of solid waste, including plastic, by a corporation on that corporation's property without a permit.

140. Defendants intentionally, knowingly or recklessly violated the Act by burying solid waste on the Halls Facility property after March 27, 1980, without obtaining a permit from or notifying the State of Tennessee.

141. U.I.S. as the current property owner is within the class of persons intended to be protected by the Act.

142. As a result of Defendants' negligent violations of the Act, U.I.S. has been injured.

143. U.I.S.'s injuries entitled it to collect damages from Defendants for those injuries.

144. Because Defendants acted intentionally, knowingly or recklessly, U.I.S. is further entitled to an award of punitive damages against the Defendants.

<u>Count 5 - Fraudulent Concealment</u>

\*     \*     \*

146. Defendants had a duty to disclose to U.I.S. all known solid waste burials and other environmental liabilities on its property prior to U.I.S.'s purchase of the

4

property.

147. Pursuant to the Act, Defendants also had a duty to report any solid waste burials on its property to the State of Tennessee, and obtain permits for those burials.

148. Defendants neither reported the solid waste burials to the State of Tennessee, nor received permits for those burials.

149. Defendants intentionally, knowingly or recklessly failed to disclose the presence of buried solid waste on the property to U.I.S. at the time of purchase.

150. At the time U.I.S. purchased the property, Defendants were aware of the solid waste buried on its property in violation of the Act.

151. As the solid waste Defendants disposed of on the property was buried, some of it underneath a building, U.I.S. had no way to discover those burials through the exercise of reasonable care.

152. Moreover, as the burials were never reported to or permitted by the State of Tennessee, U.I.S. had no way to learn of those burials by reviewing the Tennessee Department of Environment and Conservation's files.

153. As a direct and proximate result of Defendants' fraudulent concealment of the known solid waste burials on the property, U.I.S. purchased the property without knowledge of the burials and suffered harm as a result, and is entitled to collect damages from the Defendants for those harms.

154. Because the Defendants acted intentionally, knowingly or recklessly, U.I.S. is further entitled to an award of punitive damages against the Defendants.

(2d Am. Compl. ¶¶ 116-17, 128-36, 138-44, 145-54.)

The substantive law of Tennessee governs this case based on diversity of citizenship. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938) (in cases based on diversity jurisdiction, a court is to apply the substantive law of the state in which it sits). The basis for the dispositive motion is that portions of count 1 (relating to the burial of solid waste materials) and counts 3, 4 and 5 in their entirety essentially seek to enforce the Tennessee Solid

Waste Disposal Act (the "Act"), Tennessee Code Annotated § 68-211-101, *et seq.* The statute provides for the exercise of general supervision over the construction of solid waste disposal sites throughout Tennessee by a state agency as well as registration and permitting of solid waste disposal sites. Tenn. Code Ann. §§ 68-211-105 -06. The Act also makes it unlawful to "dispose of solid waste in violation of" the statutory provisions. Tenn. Code Ann. § 68-112-104(4).

    The statute does not provide for a private cause of action. Goff v. Elmo Greer & Sons Constr. Co., Inc., 297 S.W.3d 175, 186 (Tenn. 2009), *pet. for cert. filed* 78 U.S.L.W. 3461 (No. 09-921) (Jan. 28, 2010). The Goff court observed that "[a]lthough the [Act] would apply to circumstances like the burial of [waste] on private property, our courts have recognized that it does not provide a private right of action for persons harmed by a violation of its provisions." Id. (citing Wayne County v. Tenn. Solid Waste Disposal Control Bd., 756 S.W.2d 274, 283 (Tenn. Ct. App. 1988)); *see also* Ergon, Inc. v. Amoco Oil Co., 966 F. Supp. 577, 583-85 (W.D. Tenn. 1997) (no implied private right of action under the Act). Indeed, the Plaintiff concedes it has no private right of action under the Act, but points out that the court in Wayne County emphasized that "[o]ur interpretation of the scope of remedies available under the Act will not leave without recourse those who have sustained a special or peculiar injury from a violation of the Act." Wayne County, 756 S.W.2d at 283; *see also* Goff, 297 S.W.3d at 186 ("Instead, [persons injured due to violations of the Act] may seek redress under other legal theories, such as nuisance. Furthermore, in appropriate cases, a cause of action for trespass, negligence, or strict liability could be brought.") The court also explained that "[w]hile the [Act] gives the [state administrative agency] broad authority to take steps to abate acts causing a nuisance to the public in general, we concur with the trial court's determination that the [agency] does not have the statutory authority to fashion remedies in

6

essentially private nuisance actions. This relief must be found in the courts." Wayne County, 756 S.W.2d at 281. Thus, the court held that the plaintiffs "must seek these remedies in courts where the full range of legal and equitable remedies will be available to them once they have shown that a private nuisance [under state common law] exists." Id. at 284 (footnote omitted).

Both parties are in agreement, however, that there are instances where a statutory violation may give rise to a negligence *per se* claim even where no private right of action exists. In Harden v. Danek Medical, Inc., 985 S.W.2d 449 (Tenn. Ct. App. 1998), *app. denied* (Feb. 8, 1999), the Tennessee Court of Appeals addressed the issue of whether the federal Food, Drug and Cosmetic Act, which did not provide for a private right of action, nonetheless permitted negligence *per se* claims based on violations of the statute. Harden, 985 S.W.2d at 452. The court recognized that a party must establish three elements in order to recover on a theory of negligence *per se* in Tennessee: "First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public. Second, the injured party must be within the class of persons intended to benefit from or be protected by the statute. Finally, the injured party must show that the negligence was the proximate cause of the injury." Id. (internal citations omitted).

The statute relied upon must set forth a standard of care. Thomas & Assoc., Inc. v. Metro. Gov't of Nashville, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *8 (Tenn. Ct. App. Jun. 6, 2003); Bish v. Smith & Nephew Richards, Inc., No. W1998-00373-COA-R9-CV, 2000 WL 1294324, at *2-3 (Tenn. Ct. App. Aug. 23, 2000), *app. denied* (Oct. 29, 2001); King v. Danek Med., Inc., 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000), *app. denied* (Nov. 6, 2000 & Jul. 9, 2001). The King court explained that "[w]hen alleging a statute or regulation based negligence *per se* claim, it

is not sufficient for a plaintiff to assume . . . that the alleged violation of a statute automatically supports a claim of negligence *per se*. Even if the plaintiffs are within the class to be protected by the statute, a statutory negligence *per se* claim cannot stand unless the statute establishes a standard of care." King, 37 S.W.3d at 460 (internal citation omitted).

> Where a statutory provision does not define a standard of care but merely imposes an administrative requirement, such as the requirement to obtain a license or to file a report to support a regulatory scheme, violation of such requirement will not support a negligence *per se* claim. Even if the regulatory scheme as a whole is designed to protect the public or to promote safety, the licensing duty itself is not a standard of care, but an administrative requirement.
>
> . . .
>
> In concluding that the [statutory] requirement . . . does not itself support a claim for negligence *per se*, we do not intend to trivialize the alleged violation of administrative statutory provisions. They are essential to the underlying . . . regulatory scheme that serves important societal interests. But because such specific . . . rules are administrative, they do not amount to a legislative judgment as to the standard of care, and accordingly, breach of these provisions in themselves cannot underlie a negligence *per se* claim.

Id. (citing Talley v. Danek Med., Inc., 179 F.3d 154, 159 (4th Cir. 1999)); *see also* Watkins v. Affiliated Internists, P.C., ___ S.W.3d ___, No. M2008-01205-COA-R3-CV, 2009 WL 5173716, at *21-23 (Tenn. Ct. App. Dec. 29, 2009).

The Plaintiff has referred the Court to no standard of care articulated in the statute. Nor has it cited to any case holding that the Act contains a standard of care. Rather, UIS insists that it is within the class of persons the Act was meant to protect and it is probably correct. However, such status does not somehow transform the legislation's registration and permit process, and the State's general supervision of disposal sites, from, in the Court's view, administrative requirements, into a standard of care. *See* King, 37 S.W.3d at 460, *supra.* Based on the Plaintiff's failure to establish that the Act encompasses a standard of care, its claim of negligence *per se* arising from a violation

8

of the Act's provisions cannot stand. Count 4 of the complaint as amended is, therefore, DISMISSED.

With respect to the Plaintiff's remaining claims at issue in the instant motion, the Court recognizes that, while the Act does not allow for private causes of action, Tennessee courts appear to permit tort claims by persons injured as a result of violations of the statute under certain circumstances. *See* Wayne County, 756 S.W.2d at 283, *supra*. As the Defendants have failed to convince the Court at this point that the claims set forth in counts 1, 3 and 5 of the complaint as amended do not constitute an appropriate case for such claims, the remainder of their motion is DENIED.

*CONCLUSION*

For the reasons enumerated herein, the Defendants' motion for judgment on the pleadings is GRANTED as to count 4 and DENIED as to counts 1, 3 and 5.

IT IS SO ORDERED this 15th day of March 2010.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE